JiPLOTKIN, Judge.
The sole issue in this appeal is whether a creditor’s participation in a bankruptcy court order approving the sale of the debtor’s property “free and clear of all liens, claims, and encumbrances” is res judicata to a subsequent action by the creditor to protect a servitude by implied dedication on the same property. The trial court granted a motion for summary judgment filed by defendant, Badine Land Limited, finding that the participation of the City of New Orleans in in debtor’s bankruptcy proceeding extinguished the City’s right to assert its servitude by operation of the principle of res judicata. We reverse and remand.

Procedural history

This controversy arises out of a complicated set of facts surrounding the voluntary bankruptcy sale of seven lots of property involved in the development of the Canal Place commercial complex at the foot of Canal Street in the City of New Orleans by the developer, Canal Place Limited Partnership. At issue are three lots sold to Badine Land which are covered by a two-part roadway, called Canal Place East and Canal Place West, and which the City claims are subject to a public servitude. After Badine Land acquired the property pursuant to a cash sale finalized on April 7, 1993, traffic flow on the roadway, which had been freely used by the public for 10 years, was reconfigured. As a result, thejjjCity filed the instant suit, seeking a temporary restraining order, preliminary and permanent injunction, declaratory judgment, and damages in order to maintain the public’s right to use the two parts of the roadway. Badine Land responded by filing a motion for summary judgment based on res judicata, claiming that the City had waived its right to claim the servitude because it participated in settlement of the bankruptcy estate without reserving a right to claim the servitude. The trial court granted the motion for summary judgment, stating as follows:
The Third Amended Plan of Reorganization provides that the subject property was to be sold, “free and clear of any and all hens, claims and encumbrances,” except for an option granted to Celebration Park and a claim for a right of servitude asserted by Travelers. The City of New Orleans joined in the Motion to Approve the Third Amended Plan of Reorganization. The City did not reserve a claim for a servitude over the subject property. The City’s claim of an informal servitude constitutes a “lien, claim or encumbrance” as contemplated in the plan. When the City moved for approval of the reorganization plan, its claim of a right of servitude was extinguished.
(Emphasis added.) The City appeals, claiming inter alia that a non-monetary right, like the servitude at issue here, cannot be extinguished by a bankruptcy court judgment.

Construction of roadway

Prior to development of the project, Canal Place Limited Partnership submitted a zoning application to the City Planning Commission, seeking a special designation as a Central Business Planned Community District (CBPCD). Among other things, the developer stated in the application that it would “include the construction of a circulatory site access road” that would be “constructed to provide vehicular access from Iberville and Canal Streets and egress on Canal Street.” The City Planning Commission and the City Council approved the zoning application, subject to ten privisos, including a requirement that the developer construct “a roadway to provide access and egress to the on site parking garage and to facilitate vehicular circulation around the development.” New Orleans City Council Ordinance No. 8046. The subject roadway was constructed to fulfill the requirements of those provisions.
la Sale to Badine Land
Although Canal Place Limited Partnership originally filed for Chapter 11 reorganization bankruptcy, all of the property involved in the project was eventually sold when reorganization as a going concern proved to be unsuccessful. Two of the nine lots involved *772 in the project were subject to mortgages and were purchased by the mortgagees at foreclosure sales. As part of the liquidation of the debtor’s estate, the other seven lots involved in the project, which were not subject to mortgages, were sold to Badine Land following a complicated procedural history including an adversarial proceeding to which the City of New Orleans was a party as a creditor of Canal Place Limited Partnership.[1] The adversarial proceeding was eventually settled, resulting in the filing of the “Debt- or’s Third Amended Plan of Reorganization,” which provided, in pertinent part, as follows:
ARTICLE XIX. — SALE FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES.
All property subject to the Ducote Contract shall be sold to Ducote free and clear of any and all liens, claims and encumbrances, less and except:
a.) Option agreement on Lot BCP to be granted to Celebration Park Casino, Inc. or its assigns, concurrently with the Ducote sale; and
b.) Those certain claims of Travelers Insurance Company for rights of servitude or easement over parcels S-l, X-2, A-6 and that certain concrete walkway and flower bed located between the walkway and the property line separating Lots 2CP and 3CP as shown on the Exhibit A attached to the original complaint in the adversary proceeding entitled “The Travelers Insurance Company v. Canal Place Limited Partnership d/b/a Canal Place 2000;” said walkway and flower bed being directly adjacent to the building housing Saks Fifth Avenue retail outlet, all of which measures approximately six feet in width and one hundred seventy feet more or less in depth;
pursuant to 11 U.S.C. § 363(f) of the effective date or extended by the Ducote Contract, as modified by the settlement agreement, upon receipt of the purchase price stated in the Ducote Contract.
The bankruptcy court approved the debt- or’s third amended petition by an order dated March 25, 1993 that referenced the petition. The bankruptcy court order specifically noted that the City of New Orleans participated in the settlement agreement.
UFollowing the bankruptcy court order, Canal Place Limited Partnership and Badine Land entered into a cash sale dated April 7, 1993; that contract contained the following pertinent provisions:
Vendor does hereby convey the Property to Purchaser free of all liens and euneum-brances [sic] except (i) all servitudes, easements and restrictions of record, (ii) all building and zoning laws, ordinanaces [sic], local state and federal regulations which may bear on the use or condition of the property, (iii) encroachments, party walls and all other matters as reflected on the survey attached, and all rights or claims for parties in possession or leases, recorded or unrecorded, to all of which the sale of the herein described property is specifically made subject.
[[Image here]]
Vendor and Purchaser stipulate and agree that this sale of the Property is made “as is”, in its present condition, and without representation of any kind, as to quality, conditon [sic] and/or zoning, quality and condition....
Moreover “Exhibit A,” which was expressly “attached to and made a part of’ the Act of Cash Sale, stated, in pertinent part, as follows:
To the extent any of the following may be applicable, this act is made and accepted subject to the following:
(1) COB 781 798E, folio 150, Act of Destination of the owner creating servitudes on Lot 3CP as created by act dated December 11, 1984, filed December 13, 1984 under N.A. No. 581425;
(2) The restrictions on the use and development of Lots 3-CP, S-l and a portion of A-6 resulting from their inclusion in a Central Business Planned Community *773 District (CBPCD) approved by City Planning Commission, Docket No. 51/80, evidenced by the recordation of Approved Plans registered at COB 769, folio 664 and approved by the New Orleans City Council under MSC Ordinance No. 8046 adopted on March 19, 1981, as subsequently amended;
(a) Ordinance No. 8046 approved by the CBPCD subject to 11 privisos, one of which was the obligation to purchase or obtain a servitude from New Orleans Public Service, Inc. of a portion of Parcel A-3 for construction of a roadway....
[[Image here]]
(7) COB 783, folio 63, identification of Parcel S-l as a street parcel on the plan of resubdivision of Gandolfo, Kuhn, Luecke & Associates dated March 15, 1982, DWG. NoJgE-170-12, approved by City Planning Commission Subdivision Docket as 50/82 on July 7, 1982, and identification of Lot A-6 as part of a street parcel in accordance with minutes of City Planning Commission dated July 7, 1982. subdivision Docket No. 50/82;
Unquestionably, Badine Land knew prior to the sale that the lots, which were entirely covered with pavement or sidewalks, were used as a public roadway.

Res judicata

Badine Land filed a motion for summary judgment based on res judicata by which it argued that the City has no right to assert the public’s right to use the servitude. That conclusion was based on the following premises: (1) the bankruptcy court order was a final judgment which bound all the parties to the judgment concerning matters which were or could have been asserted in the proceedings, (2) the City was a party to the bankruptcy court judgment, (3) the bankruptcy court order approved the debtor’s third amended petition, (4) the debtor’s third amended petition specifically stated that the property was to be sold “free and clear of any and all liens, claims and encumbrances” except for two exceptions which do not apply here. Thus, Badine Land claims, the City has no right to assert the servitude at issue here.
The City answers Badine Land’s arguments by making the following claims: (1) the bankruptcy court judgment cannot extinguish non-monetary claims related to the property sold, (2) the City was a party to the judgment only as a creditor of the bankruptcy debtor, (3) the City Attorney who “signed off’ on the settlement agreement had no authority to waive the public’s right to the servitude, and (4) one of the express exceptions to the “free and clear” language in the third amended plan involved the exact servitude at issue here.
The trial court agreed with Badine Land and granted the motion for summary judgment, placing emphasis on the fact that the bankruptcy court order is a final judgment and the fact that the City “joined in” the motion to approve the debtor’s third amended plan without reserving a claim for a servitude over the subject property. Further, the trial court found that the City’s claim constitutes a “lien, claim or encumbrance” as contemplated in the IfiPlan. Because the City failed to reserve its rights, the claim was extinguished, the trial court said.
When a state court considers the pre-clusive effect of a federal court judgment based on federal question jurisdiction, like the bankruptcy court order in the instant case, the court must apply the federal law of res judicata. Reeder v. Succession of Palmer, 623 So.2d 1268 (La.1993), cert. denied — U.S.—, 114 S.Ct. 1191, 127 L.Ed.2d 541 (1994). The federal law of res judicata was explained in Reeder as follows:
Under federal precepts, “claim preclusion” or “true res judicata” treats a judgment, once rendered, as the full measure of relief to be accorded between the same parties on the same “claim” or “cause of action.” When the plaintiff obtains a judgment in his favor, his claim “merges” in the judgment; he may seek no further relief on that claim in a separate action. Conversely, when a judgment is rendered for a defendant, the plaintiff’s claim is extinguished; the judgment then acts as a “bar.” Under these rules of claim preclusion, the effect of a judgment extends to *774 the litigation of all issues relevant to the same claim between the same parties, whether or not raised at trial. The aim of claim preclusion is thus to avoid multiple suits on identical entitlements or obligations between the same parties, accompanied, as they would be, by the redetermination of identical issues of duty and breach.
Claim preclusion will therefore apply to bar a subsequent action on res judica-ta principles where parties or their privies have previously litigated the same claim to a valid final judgment. In most cases, the key question to be answered in adjudging the propriety of a claim preclusion defense is whether in fact the claim in the second action is “the same as,” or “identical to,” one upon which the parties have previously proceeded to judgment.
Id. at 1271 (emphasis added; citations omitted).
Indeed, in the instant case, we face the exact question identified by the Louisiana Supreme Court in Reeder as the most common type of res judicata problem — whether the claim in the instant action is “the same as,” or “identical to,” the claim decided in the bankruptcy court order.
Stated in that manner, it is obvious that the claim in the instant case is neither “the same as” nor “identical to” the creditor’s claims asserted and decided in the bankruptcy court judgment. The City, as plaintiff in the instant case, asserts recognition and protection of the public’s right to use the roadway covering the servitude which it asserts. In the bankruptcy ease, the City was involved only as a creditor of the bankrupt debtor, protecting its right to ^recover the monies advanced by the grant. The fact that the City failed to reserve its right to claim the servitude in the previous case is therefore immaterial. Because the two claims are neither “the same as” nor “identical to” one another, federal res judicata principles do not bar the instant action.
This conclusion is supported by the result in In re Oyster Bay Cove, Ltd., 161 B.R. 338 (E.D.N.Y.1993), which involved the exact issue raised by the parties to this case. In Oyster Bay, the court stated as follows:
The Order which approved the Trustee’s application to sell the property free and clear of all liens, claims encumbrances and rights of others of whatever kind or nature (the “Liens”), with such liens to attach to the proceeds of the sale of the property, means that the property was to have been sold free and clear of liens against the property, i.e. mortgage liens, judgment liens, etc., which could attach to the proceeds. The language does not indicate that the property is to be sold free and clear of non-monetary restrictions of record which run with the land. The recitation of a dedication of a street or road to the village is a statement of fact as is the recitation of metes and bounds which runs with the land, and describes that which is being offered for sale.
This is clearly evident from and consistent with the “terms and conditions of sale” which explicitly provided, inter alia, that the property was being sold “as is” and subject to “any covenants, restrictions and easements of record.”
Id. at 343 (emphasis added).
Unlike the federal cases cited by Bad-ine Land, the pertinent facts in the Oyster Bay case are virtually identical to the pertinent facts in the instant controversy, despite some minor inconsistencies which Badine Land seeks to emphasize. The above-quoted language makes it clear that a bankruptcy court order cannot extinguish a “non-monetary restriction” which runs with the land, especially when the language of the cash sale resulting from the bankruptcy court order specifically provides that the sale is “as is” and “subject to” the exact restrictions asserted by the plaintiff.
The bankruptcy court judgment is not res judicata to the instant controversy. This conclusion is supported by the fact that the contract for the cash sale of the property, executed by Badine Land subsequent to the bankruptcy court order in this case, specifically made the sale subject to the servitude for the roadway. Badine Land is not allowed to enlarge its ownership beyond the express provisions of the restrictive Act of Cash Sale.
*775 I ^Conclusion
Accordingly, the trial court judgment granting the motion for summary judgment based on res judicata in favor of Badine Land is reversed. The case is remanded to the trial court for further proceedings.

REVERSED AND REMANDED.

. The City's claim as a creditor of Canal Place Limited Partnership was based on the debtor’s failure to repay a grant advanced for the purpose of building the roadway.